**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Glen MORISSE, Defendant-Appellant.**

**No. 80–1804.**

United States Court of Appeals, Fifth Circuit.*

Unit A

Oct. 28, 1981.

Rehearing Denied Nov. 24, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

James Folsom, Corpus Christi, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CHARLES CLARK, TATE and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

On November 15, 1979, a grand jury returned a six-count indictment against defendant Glen Morisse and co-defendant Hugo Garza. Three of the six counts were applicable to defendant Morisse. The first count charged defendant with conspiracy to possess cocaine with the intent to distribute it in violation of 21 U.S.C.A. §§ 841(a)(1) and 846. The second count charged defendant with the distribution of cocaine in violation of 21 U.S.C.A. § 841(a)(1). The third count charged defendant with the unlawful possession of cocaine with the intent to distribute it in violation of 21 U.S.C.A. § 841(a)(1).

Defendant was tried by a jury and was found not guilty of the third count, which charged the unlawful possession of cocaine

with intent to distribute it. However, the jury found defendant guilty of both the conspiracy count and the substantive distribution count. Defendant was sentenced to five years imprisonment on the conspiracy count and five years imprisonment plus three years special parole on the substantive count, the terms to run concurrently.

Defendant appeals his conviction, claiming the search warrant obtained for purposes of searching his house was constitutionally defective, requiring a reversal of the case. In addition, he claims there is insufficient evidence to support the jury's finding he conspired to possess cocaine with the intent to distribute it. Finally, he claims the evidence introduced to sustain the conspiracy count fatally infected the substantive distribution count, requiring reversal. We affirm defendant's conviction of the substantive count of distribution and vacate his conviction of the conspiracy count.

## I. FACTS

On October 31, 1979, Texas Department of Public Safety Narcotics Agent Sharon Nash met with co-defendant Hugo Garza pursuant to a previous arrangement. Agent Nash picked up Garza at his residence in Corpus Christi, Texas. They drove around the neighborhood negotiating a cocaine "buy." During their negotiations, Garza told Agent Nash that the source of the cocaine she had decided to buy also possessed an additional ten kilograms of cocaine at his house. Garza and Agent Nash agreed to make the exchange of money and cocaine later that day in the parking lot of a Sambo's Restaurant. When they ultimately met, Agent Nash locked her money in the glove compartment of Garza's car and took Garza's car keys. Garza then got into Agent Nash's car and informed her that "the house we're going to right now, where you will wait out front, has the dope right there now." He then directed Agent Nash to a residence located at 3221 Laguna Shore Road in Corpus Christi. Upon arriving at the residence, Agent Nash observed defendant Glen Morisse walk from the vicinity of the house toward the street. Agent Nash pulled her car into the driveway of the house. Defendant Morisse walked out into the street, "looked up and down the street in both directions that the street ran," and then asked the officer to pull her car further into the driveway. At that time, defendant Morisse walked on into the house.

Garza got out of the car and entered defendant's house. After a very short period of time, Garza returned to Agent Nash and asked if it would be all right for the "guy" to hold the keys to Garza's car. When Agent Nash said no, Garza asked if the guy could ride back to Sambo's with them. Agent Nash agreed to this, and Garza returned to the house. However, shortly thereafter, Garza returned by himself a second time and said he and Agent Nash should go back to the Sambo's parking lot. As they drove away, Agent Nash asked Garza why the source had not come with them. Garza replied that the plans had been changed. Garza then handed Agent Nash a clear plastic bag containing eight small bags of cocaine and told her that he had received an ounce of cocaine for his services. After accepting the package, Agent Nash gave Garza the keys to his automobile and dropped him off approximately one block from the Sambo's parking lot.

Members of governmental surveillance units testified they saw defendant Morisse leave the Laguna Shore residence behind Agent Nash's car. They further testified that shortly after Garza was let out of Agent Nash's car, defendant Morisse picked him up and they drove around the neighborhood for approximately five minutes and then into the Sambo's parking lot. They were further observed as they stopped on the opposite side of the lot from Garza's car. When they started moving again, they were arrested. Defendant Morisse, Garza, and the car were searched and an ounce of cocaine was found in Garza's left sock.

Using information from other surveillance officers, his own observations, and a narrative of the foregoing events obtained

from Agent Nash, Drug Enforcement Administration Agent Dorsey Shannon submitted a four-page affidavit requesting a warrant to search the house at 3221 Laguna Shore Road. The warrant was issued. As a result of a search, two scales, some plastic bags, and a heat sealer were introduced into evidence at defendant Morisse's trial.

## II. THE WARRANT

Defendant Morisse claims the search warrant issued for the purpose of allowing law enforcement officials to search his house was invalid. His argument is twofold. First, he claims the affidavit serving as a basis for the warrant's issuance failed to meet the constitutional standards as expressed by the United States Supreme Court in the cases of *Aguilar v. State of Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Second, defendant claims the warrant itself was global.

### A. The Affidavit

When passing on the validity of a search warrant affidavit, this Court is guided by the *Aguilar-Spinelli* test. The United States Supreme Court held in the case of *Aguilar v. State of Texas* that the probable cause necessary for the issuance of a search warrant may be evidenced by an affidavit based on hearsay information and need not reflect the direct personal observations of the affiant. However, for there to be probable cause, the magistrate issuing the warrant must be provided with evidence of the informant's reliability and the reliability of his information.

In establishing these "two prongs of *Aguilar*," the affiant may buttress the informant's tip in one of two ways. First, the affiant may provide evidence of independent observations corroborating sufficient details of the tip to negate the possibility the informant fabricated his story out of whole cloth. Second, the affiant may buttress the informant's tip by evidence of independent observations that contribute to a showing of probable cause by revealing not merely normal patterns of activity, but activity that reasonably arouses suspicion. *Spinelli; Gonzales v. Beto*, 425 F.2d 963, 969 (5th Cir. 1970).

■ We find the affidavit was not invalid. The affiant in this case was DEA Agent Dorsey Shannon. His informant was Texas Department of Public Safety Narcotics Agent Sharon Nash. However, Agent Nash received much of her information from Hugo Garza. Defendant Morisse claims there is no evidence of Garza's reliability and, therefore, Agent Nash's reliability is decreased. In addition, defendant Morisse argues there was no showing of how Garza reached his conclusions. Nevertheless, the affiant was able to provide independent observations corroborating sufficient details of the tip to negate the possibility the informant (Garza) fabricated his story out of whole cloth.

Agent Shannon was a member of a surveillance team that observed Garza's activity. Garza told Agent Nash that the man who had the cocaine she was buying also possessed an additional ten kilograms of cocaine at his house. Garza also told Agent Nash that the house they were going to, where Nash would have to wait outside, had the cocaine inside. Immediately thereafter, the affiant watched as Garza and Agent Nash drove to 3221 Laguna Shore Road—the house of defendant Glen Morisse. At this location, Agent Nash waited in the driveway for approximately fifteen to twenty minutes.

After Garza and Agent Nash were observed leaving the house, Garza gave Nash the cocaine that was the subject of the sale and told her that he received an ounce of cocaine for his services. At the same time, the affiant saw defendant Morisse following Garza and Agent Nash as they returned to the Sambo's parking lot. Of course, the money was at the parking lot. In addition, Agent Shannon was present when an ounce of cocaine was found hidden in Garza's sock.

These observations corroborated virtually every detail Garza had provided. The activity of Garza and defendant Morisse, and

the mechanics of the distribution scheme, corresponded precisely with Garza's detailed description. These observations negate the possibility Garza fabricated his story. The affidavit established the probable cause necessary for the issuance of the search warrant.

### B. *The Warrant Itself*

■ We also find the warrant itself was not invalid. The warrant provided for the search and seizure of "drug trafficking paraphernalia, records, money, and other evidence of drug trafficking." Of course, it is fundamental that a search warrant may not be a general warrant. However, this warrant was not general.

The affidavit provided probable cause to suspect a drug distribution scheme and the warrant limited the search and seizure to paraphernalia, records, and money connected with the alleged drug-related crimes. "When circumstances make an exact description of instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking." *James v. United States*, 416 F.2d 467, 473 (5th Cir. 1969); *Spinelli v. United States*, 382 F.2d 871 (8th Cir. 1967) reversed on other grounds), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Calo v. United States*, 338 F.2d 793 (1st Cir. 1964). The items to be seized were as precisely identified as the nature of the activity permitted. As a result, the warrant was not global.[1]

In summary, we find the search warrant and its underlying affidavit were not invalid. As such, there was no reversible error.

### III. *THE SUBSTANTIVE COUNT*

Defendant Morisse's sole argument in support of reversing his conviction of the substantive count of cocaine distribution is that a substantive count should stand or fall upon a finding of whether it was fatally infected by evidence introduced regarding the conspiracy count. He argues that in this case, the substantive count was fatally infected by evidence relating to the conspiracy count.

At trial, the Government charged a conspiracy beginning on or about September 11, 1979 and continuing through October 31, 1979. The trial court admitted evidence relating to drug transactions involving co-defendant Garza that occurred prior to October 31. In addition, the court admitted hearsay statements under the co-conspirator exception to the rule against hearsay. Defendant Morisse claims this evidence was so highly prejudicial that the jury must have considered the evidence in deciding he was guilty of distributing cocaine on October 31.

■ However, there was sufficient independent proof of defendant Morisse's guilt of the substantive count to avoid any possible prejudice resulting from the conspiracy evidence. As has been discussed, Agent Nash traveled to defendant Morisse's house where he was seen looking up and down the street, inferentially to see if Garza and Agent Nash were being followed. Immediately after leaving defendant Morisse's house, Garza supplied Agent Nash with the cocaine she had agreed to purchase. In addition, defendant Morisse was observed following Garza and Agent Nash to the Sambo's Restaurant parking lot where the money was waiting. Evidence relating to the conspiracy count did not fatally infect the substantive count. Therefore, we af-

---

1. We note that this case does not raise the problem of a generic description that conceivably would allow law enforcement agents to seize legal items. The nature of drug trafficking is such that illegal paraphernalia is readily distinguishable from legal items. We can conceive of certain illegal activities in which the nature of the activity does not allow for such ready segregation. In those cases, the magistrate should take care to assure the warrant informs the law enforcement agent as to how he should distinguish between illegal paraphernalia and items that are held legally.

We also note that in this case, as in any case involving a generic description of items, "responsible officials, including judicial officials, must take care to assure that [the searches] are conducted in a manner that minimizes unwarranted intrusions upon privacy." *Andresen v. Maryland*, 427 U.S. 463, 482 n.11, 96 S.Ct. 2737, 2749, 49 L.Ed.2d 627 (1976).

firm defendant Morisse's conviction of the distribution of cocaine.

 As we have noted, defendant Morisse was convicted under both the conspiracy count and the substantive count, receiving concurrent sentences. As a result of this sentencing, and in the interest of judicial economy, this Court chooses not to carry out a detailed review of the conviction under the conspiracy count. Instead, we vacate the conviction.

This action does not affect the jury's verdict; its effect is to suspend imposition of the sentence. In addition, this action "does not impair any need of the government" and "avoids the possibility of adverse collateral consequences to defendant." If at some later date the interests of justice dictate reimposition of the sentence, the Government may raise the issue and the conviction would be subject to appellate review. *United States v. Cardona*, 650 F.2d 54, 58 (5th Cir. 1981) (citing *United States v. Hooper*, 432 F.2d 604, 606 (D.C.Cir.1970)).

Since defendant Morisse's claims do not constitute reversible error, his conviction is

AFFIRMED IN PART; VACATED IN PART.