**UNITED STATES of America**

v.

**John Frederick CASSIDY, Jr.**

**No. Cr–81–109–09–D.**

United States District Court,
M. D. North Carolina,
Durham Division.

Feb. 5, 1982.

**614**

David B. Smith, Asst. U. S. Atty., Greensboro, N. C., for plaintiff.

Terrence W. McDonald, San Antonio, Tex., for defendant.

## MEMORANDUM OPINION

ERWIN, District Judge.

This case was noticed for hearing on October 20, 1981 at the United States Courthouse in Winston-Salem, North Carolina. Pursuant to such notice, the motion of John Frederick Cassidy, Jr. to suppress evidence seized pursuant to an allegedly invalid search warrant was heard by the court.

Based on the briefs filed by the parties, the testimony and exhibits adduced at the hearing, and other evidence appearing of record, the court concludes that the motion to suppress of defendant John Frederick Cassidy, Jr. should be denied.

### Background

Defendant John Frederick Cassidy, Jr. and ten other defendants were charged on September 2, 1981 in a two-count indictment with violations of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(6).

In an affidavit made on August 14, 1981 before United States District Judge W. Earl Britt of the Eastern District of North Carolina, Special Agent Robert W. Johannesen, Jr. of the Drug Enforcement Administration testified that based on information received from a reliable source and surveillance investigations by other agents, a controlled substance, namely marijuana, was being concealed in a single-story, wood-frame house on Rural Paved Road 1536 in Chatham County, North Carolina. The wood-frame house was owned by one Ms. Katherine Heath (hereinafter the Heath residence). Agent Johannesen testified that the foregoing information gave rise to reason to believe that concealed on the premises of the Heath residence were contraband, drug paraphernalia, financial and business records, and notations relating to the smuggling, packing, distribution, and use of controlled substances. (See Government's Exhibit 2.)

Based on the affidavit testimony of Agent Johannesen, a warrant was issued on August 14, 1978 authorizing the search of the Heath residence resulting in the seizure of certain described property believed to have been used in the smuggling, packing, distribution, and use of controlled substances. (See Government's Exhibit 1.) The warrant was executed on August 14,

1981. At that time, Special Agents of the Drug Enforcement Administration seized from the residence items deemed to have been used in furtherance of the alleged illegal activity. These are the items which Cassidy seeks to suppress.

## Findings of Fact

From the evidence presented, the court finds the following facts:

1. On Monday, August 11, 1981, a Special Government Agent of the United States Customs Service advised Special Agent Johannesen that a reliable source of information, who had provided information in the past that resulted in the discovery of several large marijuana smuggling operations, reported that a trawler bearing 45,-000 pounds of marijuana was going to dock in the area of New Bern, North Carolina, and the marijuana would be transported by truck to Raleigh, North Carolina on Thursday. The informant further reported that the individual selling the marijuana could be located at telephone number 919–787–8121, in Room 256, and the broker of the marijuana was named "Herbie."

2. Agent Johannesen checked the Raleigh telephone directory and discovered that the telephone number provided by the informant was listed to the Triangle Motel, located at the Raleigh-Durham Airport. Agent Johannesen learned from the desk clerk (Triangle Motel) that Room 256 had been registered to a Phillip A. Haveard of Fort White, Florida who had checked out on August 12, 1981. Agent Johannesen telephoned several motels in the Raleigh area and discovered that a Phillip A. Haveard was registered in Room 157 of the Governor's Inn, located in Research Triangle Park, North Carolina. (Research Triangle Park is located approximately midway between the cities of Raleigh and Durham, North Carolina.)

3. Agent Johannesen and other government agents established surveillance of Room 157 and other areas of the Governor's Inn. In the parking area of the motel, Agent Johannesen observed a David Mattingly driving a burgundy colored Oldsmobile automobile bearing N. C. License Plate Number WFR 625. Agent Johannesen recognized Mr. Mattingly as a suspected narcotics dealer from prior drug investigations in the Wilmington, North Carolina area.

4. On August 14, 1981, government agents observed a brown Toyota automobile leave the Governor's Inn parking area followed by a black Ford pick-up truck with a camper shell attached to the rear. Because of the truck's position to the road, it appeared empty. Agents (in two cars) followed the truck and the Toyota. At a point in Chatham County, later determined to be within 1.5 miles of the Heath residence, the agents lost contact with the two vehicles. Approximately one hour later, the government agents observed the truck pass a point approximately 1.5 miles from the Heath residence. The agents resumed following the truck. At this time, the truck appeared to be fully loaded. The agents followed the truck to a point just south of Carrboro, North Carolina where they stopped the vehicle. The driver, identified as Kenneth Rhyne, was arrested, read *Miranda* warnings, and asked by an agent if they could search the rear of the truck. He consented, whereupon the agents discovered the rear of the truck to be loaded with approximately 1,149 pounds of marijuana. Mr. Rhyne stated to the officers that he had been led by a brown Toyota to a house located on a dirt road, but that he would be unable to locate the house again.

5. At about 5:00 p. m. on August 14, an agent returned to the area where surveillance of the Ford truck was initially lost. While there, the agent observed a burgundy Oldsmobile pass his location. The agent recognized the automobile as the one identified earlier as being driven by David Mattingly. The agent followed the automobile to the Heath residence and established surveillance of the house on foot in a nearby wooded area. From this vantage point, the agent observed Phillip A. Haveard arrive at the house in a silver-colored Oldsmobile. He also observed a Chevrolet Vega with a U-Haul carrier attached to the roof. The Vega was parked in the house's carport,

being loaded with articles which the agent could not identify. After a short period of surveillance, Mr. Haveard was observed leaving the house in the silver Oldsmobile, and two gentlemen, later identified as Patrick G. McNulty and Lawrence M. Rambo, were observed leaving the house in the Vega. The three individuals returned to the Governor's Inn. Immediately after the two automobiles left the house, the agent observed someone sweeping the floor of the carport.

6. After being notified of the activities at the Heath residence and the seizure of 1,149 pounds of marijuana from the Ford truck, Agent Johannesen and Agent Otis Rousseau (case agent for the government's operation) determined that the Heath residence had to be searched as soon as practicable. Agent Rousseau made several telephone calls in an unsuccessful attempt to contact a federal magistrate in the Middle District of North Carolina. The agents then decided that the quickest way to obtain a search warrant would be to contact the nearest federal judge, whom they realized was United States District Judge W. Earl Britt of the Eastern District of North Carolina. Judge Britt's residence was located in Raleigh, Wake County, North Carolina, which is in the Eastern District of North Carolina, adjacent to Chatham County. The judge's residence was approximately thirty-five miles from the Heath residence, which is in the Middle District of North Carolina. Agent Johannesen arrived at Judge Britt's residence at approximately 10:30 p. m. on the 14th, whereupon the agent asked Judge Britt if he had the authority to issue a warrant for the search of a house in the Middle District. Judge Britt stated that he had received authority to issue a search warrant in the Eastern District for a search in the Middle District. An affidavit was presented, and a warrant was issued by Judge Britt for the search of the Heath residence. (See Government's Exhibits 1 and 2.)

7. Judge Britt was designated and assigned on December 31, 1980 to hold court in the Middle District of North Carolina during the period beginning January 1, 1981 and ending December 31, 1981 by order of the Chief Judge of the Court of Appeals, Fourth Circuit, pursuant to Title 28 of the United States Code, Section 292(b).

8. Agent Johannesen went to the Heath residence at approximately 11:00 p. m. to execute the warrant. Upon entering the house, he noticed a strong smell of marijuana and subsequently discovered 279 pillow bales of marijuana stacked throughout the house. Approximately 14,000 pounds of marijuana was later determined to have been in the house.

9. Agent Johannesen notified other agents of his discovery, whereupon all individuals suspected to be in some way connected with the marijuana were arrested and charged with distributing and possessing and conspiring to distribute and possess an amount of marijuana in excess of 1,000 pounds.

### Defendant's Contentions

The defendant makes the following two contentions:

1. That because Judge Britt is judge for the Eastern District of North Carolina, he did not have the authority to issue a search warrant that would be executed in the Middle District of North Carolina; and that this warrant was invalid under Rule 41 of the Federal Rules of Criminal Procedure, and all items seized pursuant thereto must be suppressed.

2. That the search warrant issued for the Heath residence contravenes the Fourth Amendment because it did not describe the items to be seized with sufficient particularity.

### Conclusions of Law

The defendant's first contention cannot stand. The court interprets Judge Britt's assignment and designation to the Middle District of North Carolina (see Finding of Fact 7) as conferring upon Judge Britt the authority to act as if he were a duly appointed district court judge of the Middle District, which ostensibly entails is-

suing search warrants for execution in this district. Moreover, the law does not require that the actual issuance of a search warrant be performed in the district where it is to be executed, but only that the issuing officer have authority in the district where the warrant will be executed. *United States v. Strothers*, 578 F.2d 397 (D.C. Cir. 1978).

▮ Assuming arguendo that Judge Britt lacked authority to issue the search warrant resulting in a violation of Rule 41, the violation nonetheless does not warrant suppression of the evidence. The exclusionary rule is not to be applied automatically when the issuance of a search warrant does not comply with the dictates of Rule 41. *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir. 1980). Only when the violation of Rule 41 reaches constitutional magnitude must the court suppress the seized evidence without reservation. Otherwise, the seized evidence is admissible unless it is demonstrated that the violation of Rule 41 either (1) prejudiced the defendant in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed or (2) there is evidence of intentional and deliberate disregard of a provision in the rule. *United States v. Burke*, 517 F.2d 377, 386 (2d Cir. 1975).

▮ In the case at bar, any failure to comply with Rule 41 certainly was not a violation that could possibly rise to constitutional dimensions. Both the affidavit and warrant comported with the requirements of the Fourth Amendment. The affidavit adequately set out sufficient facts from which a neutral and detached magistrate or judge could determine that there existed probable cause to support the issuance of the search warrant (see Government's Exhibit 2), and the search warrant particularly identified the place to be searched and the items to be seized (see Government's Exhibit 1). *Discussed infra.*

▮ Consequently, the court's inquiry must focus on any prejudice to the defendant or deliberate disregard of Rule 41 by the government agents or Judge Britt. As heretofore noted, probable cause to support issuance of the warrant was established by affidavit. Thus, the warrant would have been issued by a judge or magistrate of the Middle District. Also, neither Judge Britt nor any government agent or agents intentionally or deliberately acted in bad faith. The facts demonstrate conscious efforts on behalf of the government agents to comply with the rule and a good faith belief on behalf of the government agents and Judge Britt that their actions were in compliance with the law. Moreover, the absence of all magistrates in the Middle District, the character of the situation, and the proximity of Judge Britt to the investigation made him a logical choice for presentation of the affidavit. The government agent's hands may not be tied in the circumstances as shown in the record.

The defendant's second contention also cannot stand.

The warrant issued for the search of the Heath residence authorized the search for and seizure of the following items:

(1) property that constitutes evidence of the Commission of a criminal offense; or (2) contraband, the fruits of a crime or things otherwise criminally possessed; (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense; including but not limited to drug paraphernalia, items of identification, financial and business records, notations, items, instrumentalities and substances relating to the smuggling, packing, distribution and use of controlled substances.

The inventory of the items seized from the Heath residence pursuant to this warrant is reproduced in the margin.[1]

---

1. Telephone toll records and one photograph, one notebook "scribbletex" with figures, one plastic box containing labels, one marijuana cigarette, plastic bag containing four plastic bags of marijuana and one plastic bag containing blue tablets and orange/yellow capsules, business card "Detective G. L. Roper," one set of scales (100 lb. capacity), empty and full boxes of "Glad" garbage bags, paper towel containing marijuana and one photograph,

The Fourth Amendment provides that no warrant shall issue unless it "particularly describ[es] the place to be searched, and the persons or things to be seized." As the Supreme Court notes in *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Quoted in Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965), *and in Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976).

Federal Rule of Criminal Procedure 41(b)(1), (2), and (3) states the definition of material which may be seized with a warrant as the following:

> (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense ....

The language in the search warrant at issue includes the very provisions of Rule 41(b)(1), (2), and (3); however, the description goes farther to circumscribe the items to be seized as those relating to the smuggling, packing, distribution, and use of controlled substances.

The facts of *United States v. Fuller*, 441 F.2d 755 (4th Cir. 1971), are closely analogous to the instant case. In *Fuller*, "the warrant authorized searching for and seizing 'booking records and wagering paraphernalia consisting of, but not limited to, accounting sheets, rundown sheets, betting slips, recap sheets ....'" *Id.* at 760.

The Court found that the description was necessarily general, but the officer's authority was limited to the seizure of items relating to a booking operation. The Court held "that a warrant which is limited to the seizure of items which are directly related to a booking operation [is not] the kind of general search prohibited by the Fourth Amendment." *Id.*

In *Andresen v. Maryland, supra* 427 U.S. at 479, 96 S.Ct. at 2748, the Supreme Court upheld a search where items were seized pursuant to a search warrant authorizing seizure of specific documents "together with fruits, instrumentalities and evidence of crime at [this] time unknown." The Court found that read in context, the warrant limited the authorized seizure to evidence of one particular offense, and the above-quoted phrase did not invalidate the warrant.

The Fourth Circuit, in *United States v. Jacob*, 657 F.2d 49, 52 (1981), recently interpreted *Andresen* as providing that a "defective qualifying phrase will not defeat a warrant which is otherwise sufficiently specific," and the court reiterated this circuit's standard of seeking "to avoid the suppression of evidence seized pursuant to a warrant because of 'hypertechnical' errors." *Id.*

■ Based on the foregoing authority, the warrant in question does not suffer from the lack of specificity proscribed by the Fourth Amendment. Though the warrant's description was general in part, taken as a whole, the description was more than adequate to curb the discretion of the government agents, providing them with firm parameters as to what could lawfully be seized. As noted in *Fuller* and *Andresen*, a warrant does not permit a general

black "Minolta" case containing plastic "gram" bag of white powder, brown glass vial containing white powder residue, plastic bag containing two white tablets, one black notebook, one N.C. roadmap, one piece of crumbled notebook paper (blank), paper napkin with writing on it, brown paper bag containing newspaper and brown grassy substance, brown bag containing 4 rolls of Anchor duct tape, 2 memo books (green and blue), plastic baggy containing grassy substance, paper towel wrapper and piece of tissue, green plastic bag and plastic baggy, partial cardboard box, black garbage bag containing marijuana which was swept from carport, 279 bales of marijuana total weight of approximately 14,000 lbs.

search where the items to be seized are defined in character to a specific criminal act. Here, the warrant confined the seizable items to those related to the crime of smuggling, distributing, and using controlled substances. Such specificity passes constitutional muster. The court, therefore, concludes that the description in the warrant does comply with the particularity requirement of the Fourth Amendment.

An Order is filed contemporaneously herewith in accordance with the findings and conclusions delineated herein.