UNITED STATES of America

v.

Juan PEREZ.

Crim. No. 82–179–02.

United States District Court,
D. New Jersey.

Dec. 30, 1982.

W. Hunt Dumont, U.S. Atty. by Thomas G. Roth, Asst. U.S. Atty., Newark, N.J., for plaintiff.

Patrick J. Tansey, Fort Lee, N.J., and Jack J. Kazanchy, West New York, N.J., for defendant.

## OPINION

BROTMAN, District Judge.

Defendant Juan Perez is charged with one count of conspiring to distribute heroin, in violation of 21 U.S.C. § 846 and six counts of distributing heroin, in violation of 21 U.S.C. § 841(a)(1). The case is now before the court on defendant's motion to suppress evidence seized under a search warrant issued May 26, 1982. Defendant has challenged the admissibility of the evidence on two grounds: (1), that the warrant did not satisfy the "particularity" requirement of the Fourth Amendment and (2), that admission into evidence of cocaine seized during the search would violate Rule 404(b) of the Federal Rules of Evidence. Although the court has been asked to reserve judgment on the Rule 404 issue until an appropriate point in the trial, this objection is apparently mooted by the court's disposition of the Fourth Amendment objection, which follows below.

The warrant in question was signed by a Superior Court judge upon review of two affidavits of Lieutenant Daniel Doherty, an investigator for the Hudson County Prosecutor's Office specializing in drug enforcement. In addition to his own affidavits, Doherty submitted to the judge three sworn statements of Lieutenant James Macomber, a supervisor in the Narcotics Strike Force of the Hudson County Prosecutor's Office. Macomber's affidavits were prepared in support of three court-ordered wiretaps which were authorized at preliminary stages in the government's investigation.

The warrant authorized the search of the second story of 4911 Bergenline Avenue in West New York, New Jersey for the discovery and seizure of:

controlled dangerous substances and adulterating and packaging material and equipment, storage containers, scales, measuring devices, telephone numbers, lists, books and records of drug transactions and contraband money from drug transactions.

The defendant does not contend that this warrant was not based upon probable cause. He spotlights the phrase "controlled dangerous substances" and argues that this phrase fails to specify with the requisite precision the nature of the substances to be seized. Defendant contends that the government's investigation centered upon the suspected distribution of cocaine and heroin, rather than illicit substances generally, and hence the warrant should have directed the seizure of "cocaine" and "heroin" rather than the much broader assortment of goods falling under the rubric "controlled dangerous substances."

In response, the government concedes that the investigation was mainly concerned with cocaine and heroin distribution, but argues that it was shadowing a diversified drug-trafficking ring such that describing the items sought as "controlled dangerous substances" was the only means of conveying the proper scope of the search. Alternatively, the government argues that given probable cause, a warrant authorizing the search and seizure of "controlled dangerous substances" is in *per se* compliance with the Fourth Amendment's particularity command.

■ The Fourth Amendment requires all warrants to contain a "particular description" of the things to be seized. "The particularity requirement 'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken,

nothing is left to the discretion of the officer executing the warrant.'" *United States v. Christine,* 687 F.2d 749, 752 (3rd Cir.1982), *quoting Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The warrant must be drawn to prevent a "general exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The warrant must enable the executing officer to reasonably ascertain and identify the things which are authorized for seizure. *United States v. Cook,* 657 F.2d 730, 733 (5th Cir.1981).

■ These standards are to be interpreted in a "commonsense and realistic fashion," *Christine, supra,* at 760, *quoting United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). The court must engage in a pragmatic analysis which appraises the amount of detail needed in the light of the circumstances surrounding the seizure and the nature of the goods to be seized. *United States v. Johnson,* 541 F.2d 1311, 1314 (8th Cir.1976). Accordingly, when the precise identity of goods cannot be determined prior to a warrant's issuance, a more lenient standard of particularity should be applied than in the case of goods whose exact characteristics are known (*e.g.:* stolen property for which detailed descriptions are available from the owner).

■ Under these guidelines, generic descriptions of goods in search warrants have been held acceptable in certain instances. *See, e.g.: United States v. Cortellesso,* 601 F.2d 28 (1st Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); *United States v. Scharfman,* 448 F.2d 1352 (2nd Cir.1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972); *United States v. Giresi,* 488 F.Supp. 445 (D.N.J. 1980), *aff'd mem.,* 642 F.2d 444 (3rd Cir. 1981), *cert. denied,* 452 U.S. 939, 101 S.Ct. 3081, 69 L.Ed.2d 953 (1981). However, a generic term or general classification in a warrant is not acceptable when a more specific description of the goods to be seized is available. *Christine, supra,* at 760; *Cook, supra,* at 733; *Montilla Records of Puerto Rico v. Morales,* 575 F.2d 324, 326 (1st Cir. 1978). "Failure to employ the specificity available will invalidate a general description of a warrant." *Cook, supra,* at 733.

■ Applying these standards to the instant facts, the court holds that the search warrant issued was constitutionally defective. The affidavits submitted to the judge who issued the warrant reveal that the government's primary suspicions of illicit activity centered on heroin and cocaine trafficking, at the time the application for the warrant was made. There are numerous references to both drugs in the texts of the affidavits. (*See, e.g.:* Macomber Affidavit of May 11, 1982, ¶¶ 11 [describing a cocaine transaction], 12 [describing a heroin transaction]; Macomber Affidavit of April 30, 1982, ¶¶ 4(e) [describing heroin transactions], 6 ["extraordinary quality of heroin"]; Macomber Affidavit of April 12, 1982, pp. 9–14 [focusing suspicion on both cocaine and heroin]. In fact, in its letter memorandum in opposition to suppression, the government flatly states: "it is apparent from the affidavits in the case that the investigation was directed at both heroin and cocaine trafficking."

In defense of the search warrant's draftsmanship, the government turns the court's attention to ¶ 19 of Macomber's April 12th Affidavit, which reads:

At this point in this investigation, the affiant has probable cause to believe that Gilberto Plasencia [an alleged confederate of the defendant] and those with whom he is associated are conducting an extensive and highly sophisticated drug distribution operation which imports and distributes virtually pure heroin and which also deals in other drugs such as cocaine.

On the basis of this record the government concludes that use of the phrase "controlled dangerous substances" was the best means of expressing the permissible scope of the search. In effect, the government argues that when more than one drug is the object of a search, the only available means of describing the goods to be discovered and

seized is through the general label of "controlled dangerous substances." The court is puzzled by the government's logic.

The affidavits indicate that, in order of probability, the drugs most likely to be found on the defendant's premises were: (1) heroin; (2) cocaine and (3) miscellaneous unknown substances. There existed probable cause to support a finding of all three types of goods. In making its quantum jump from the need to single out "heroin" in the warrant to the need to use the phrase "controlled dangerous substances," the government vaults over a wide range of possible descriptions which were available. These descriptions would have given far greater direction to the search.

For instance, the search warrant could easily have authorized the search and seizure of "heroin, cocaine or other controlled dangerous substances." Or it might have called for the seizure of "controlled dangerous substances, particularly heroin and cocaine." Such descriptions would have focused the executing officer's search and markedly reduced the likelihood of an indiscriminate rummaging through defendant's personal effects.

At argument the court was asked by the government to presume that the officer carrying out the warrant would be a person with broad expertise in the identification of illicit drugs, such that he would have had no real need for particularized information. This argument must be rejected on two grounds. It must be noted that the warrant is addressed to "Any Law Enforcement Officer, with necessary and proper assistance." This hardly guarantees that the executing officer will be one with broad-based drug tracking expertise. Secondly, and more importantly, the judicial officer authorizing the search is charged with limiting the search as much as possible; his ideal is to remove the need for any discretionary action by the executing officer from the realm of the search. Choosing to withhold details which would give guidance to a search, with the effect of expanding the executing officer's discretion, is an act in diametric opposition to the authorizing judicial officer's duty.

The court has been asked to take judicial notice that "controlled dangerous substances" share so many common characteristics that describing each substance to be searched for would have been unnecessary and superfluous. The court must spurn this request. Even if true, there was no such information presented to the judge who authorized the warrant in question. The validity of a warrant must be appraised by the facts presented to the judicial officer at the time the warrant is sought and not by facts later found to exist by the executing officers or facts known to the warrant applicants but never disclosed to the issuing judge. *Christine, supra,* at 757, 758–759; *United States v. Klein,* 565 F.2d 183, 186–87 (1st Cir.1977) (". . . we do not believe that the particularity requirement of warrants can be fulfilled by the uninformed speculation of magistrates or even judges as to whether one form of contraband or another can be distinguished from legitimate similar products by agents who may or may not be experts in the field."). *See also Whiteley v. Warden,* 401 U.S. 560, 564–66, 91 S.Ct. 1031, 1034–35, 28 L.Ed.2d 306 (1971). The centrality of the warrant requirement to the Fourth Amendment's safeguards mandates that defective warrants cannot be salvaged by *post-factum* rationalizations. *Id.*

In addition, the affidavits submitted in support of the warrant cannot be relied upon to provide the requisite particularity. To be used for this purpose, the affidavits must accompany the warrant and must be incorporated into the warrant by the warrant's own terms. *See United States v. Womack,* 509 F.2d 368, 382 (D.C.Cir.1974), *cert. denied,* 422 U.S. 1022, 95 S.Ct. 2644, 45 L.Ed.2d 681 (1975); *United States v. Lightfoot,* 506 F.2d 238 (D.C.Cir.1974). *But see United States v. Wuagneux,* 683 F.2d 1343, 32 Crim.L.Rep. 2009 (BNA) (11th Cir.1982). In this instance, the warrant makes no mention of the supporting affidavits and there is no evidence in the record that the affidavits were attached to the warrant.

The government also contends that "controlled dangerous substances" is sufficiently

precise to come within the Fourth Amendment's dictates, since this phrase is defined by New Jersey law. This argument elides the fact that the relevant statutory sections, N.J.S.A. 24:21–1 *et seq.*, contain five schedules of controlled dangerous substances which, by any measure, embrace a lengthy and extremely varied list of illegal drugs. A search for "controlled dangerous substances" is much closer to an indiscriminate freebooting raid than to a defined, focused inquiry. Because of the great variety of illicit goods encompassed by "controlled dangerous substances," this case cannot be analogized to those cases suggesting that searches for contraband may be bound by lesser strictures of particularity as those cases involved single or limited forms of contraband. *See, e.g., Elrod v. Moss,* 278 F. 123 (4th Cir.1921), *relied upon* in *Steele v. United States No. 1,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925).

The heart of the matter is that the judge issuing the search warrant was given reasonable grounds to believe that heroin, cocaine, and perhaps other dangerous controlled substances were present on defendant's premises, yet chose to phrase the warrant (as to these goods) in the broadest of available terms. As indicated above, more precise descriptions were feasible which would have narrowed the searcher's inquiry and greatly reduced the danger of an unbridled search which would intrude upon personal rights.

The court must explain that it is not proscribing the use of "controlled dangerous substances" or other similar terms as permissible phraseology in a drug-directed search warrant. Nor is the court holding that a search is constitutionally premature until an investigation crystallizes around specified illicit substances. The court recognizes that in many instances, the ultra-secretive and diversified character of the drug trade, conducted in code, may make it impossible to identify in advance the exact nature of the products being distributed. In such instances, use of the term "controlled dangerous substances" may indeed be correct. As the Supreme Court has noted:

The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession.

*Andresen v. Maryland,* 427 U.S. 463, 480 n. 10, 96 S.Ct. 2737, 2748 n. 10, 49 L.Ed.2d 627 (1976).

But where, as here, there was probable cause to search for heroin and cocaine, and this information was transmitted to the judicial officer authorizing the warrant, a more specific description of the substances sought should have been employed than the one actually written in the search warrant. The search warrant issued simply did not reflect the depth of the investigators' communicated knowledge and suspicions of illicit activity and unnecessarily permitted a far more rambling search than was required, under the circumstances. A clear opportunity to thwart a general rummaging was missed and an invasion of property rights was made more likely.

In so deciding, the court does not suggest that warrants seeking known controlled substances must catalogue every minute detail known about the substances with a kind of scientific precision. The court merely holds that basic information which will abet the orderly conduct of a search, such as the colloquial names of the suspected illicit substances, should be written into the warrant.

Consequently, under the redaction procedure recently outlined in *Christine, supra,* the court must strike the offending phrase "controlled dangerous substances" from the warrant. The court also must suppress all evidence seized under this clause. All the other clauses of the warrant still stand and all the evidence seized thereunder is still admissible. The May 26th warrant is redacted to read, in relevant part:

"adulterating and packaging material and equipment, storage containers, scales, measuring devices, telephone number lists, books and records of drug transactions and contraband money from drug transactions."

The government's prosecution for heroin distribution shall proceed accordingly.

An order consistent with the foregoing shall be entered.*

---

\* Although not brought to this court's attention until after the motion herein was decided, this opinion is fully consonant with that of *United States of America v. Johnson,* 690 F.2d 60 (3rd Cir.1982). *Johnson* sustained a general clause in a warrant only after finding that this clause could be sufficiently particularized by an affidavit which accompanied the warrant and was incorporated into it by reference. Construing the warrant and the affidavit together, the *Johnson* court found that rather than generally authorizing the seizure of evidence of "crimes," the warrant clause in issue authorized the seizure of objects "connected with the manufacture of methamphetamines." This is far more particular than the authorization contained in the warrant *sub judice.*

*Cf:* the *Johnson* dissent: "To allow agents to describe drugs generically when the agents know the particular drugs sought would ... subvert the requirements of probable cause as well as particularity." *Johnson, supra,* at 66 (Block, dissenting).