UNITED STATES of America, Plaintiff,

v.

Jerome F. BLAKENEY, Defendant.

Crim. No. 83–256.

United States District Court,
District of Columbia.

Dec. 16, 1983.

Douglas Behr, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Michael Frisch, Bethesda, Md., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendant's motion to suppress tangible evidence, the Government's opposition thereto, and the entire record herein. The Court held a hearing on defendant's motion to suppress tangible evidence and heard testimony from Special Agent John R. Seiler of the Bureau of Alcohol, Tobacco and Firearms, Detective Donald Lyddane of the Metropolitan Police Repeat Offender Unit, and defendant Jerome F. Blakeney. For the reasons stated below, the Court grants in part and denies in part defendant's motion to suppress tangible evidence.

### STATEMENT OF FACTS

On September 8, 1983, officers from the District of Columbia Metropolitan Police Department Repeat Offender Unit, along with Special Agent John R. Seiler of the Bureau of Alcohol, Tobacco and Firearms, executed a valid search warrant. The warrant was for the seizure of drugs, specifically, marijuana and PCP. The warrant was issued for the premises of 4331 Fourth Street, S.E., Apartment 10. At the time the warrant was issued, the police officers did not know the identity of the occupant of Apartment 10. The only prior knowledge that the police had concerning the identity of the person who occupied the apartment was that he was called "Jerome."

When the police executed the warrant, no one was present at Apartment 10. The police were therefore required to make a forcible entry into the apartment. Upon entering, the police discovered lying on a small stand, in plain view, a Model Blackhawk, .44 magnum, Strum Ruger revolver. The police, however, did not take possession of the weapon. Upon further investigation in their search for drugs, the police also discovered in defendant's bedroom leaning against a wall, a Remington, bolt-action, .30 caliber rifle. Also located in defendant's bedroom on a "T.V. stand" was a Colt Mark IV, .45 caliber semi-automatic pistol. At that time, these weapons were also not taken into possession by the police.

During the search for drugs, police found defendant's certificate of parole which was located in defendant's briefcase. The briefcase was located on the floor next to defendant's bed. No drugs were found in defendant's briefcase. Based on discovery of the certificate of parole, observation of other papers that disclosed defendant's identity in their search for drugs, and observation of weapons that were lying in plain view, the police believed that they had sufficient probable cause to make a records check on defendant's status. The records confirmed that defendant was convicted of a felony and so the weapons were seized. Upon completion of the search, the police also discovered and seized approximately three pounds of marijuana. No PCP was recovered.

Following the search of Apartment 10, an arrest warrant was issued for defendant. The police went to Mr. Blakeney's place of employment at 1000 Constitution Avenue, N.W. Upon arriving at that location, the police officers went to Security who in turn took them to Personnel. Defendant was then summoned to the Personnel Office where he was searched and placed under arrest. The search produced seven "nickel bags" of marijuana. After

the arrest and while defendant was still at his place of employment, the police officers requested his consent to search his locker. They stated that if defendant refused, they would get a search warrant within the hour. Defendant consented to the search of his locker, believing that he had no other alternative. It is plain from the testimony, however, that this consent was attained from defendant while he was under arrest and without the benefit of having his *Miranda* rights read to him. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The search of defendant's locker produced approximately six additional "nickel bags" of marijuana.

## CONCLUSIONS OF LAW

Defendant seeks to suppress all the weapons discovered at his home, as well as the marijuana that was discovered in his locker at work. The Court denies the portion of defendant's motion to suppress the weapons found in his home, but grants the portion of his motion to suppress the marijuana discovered in his locker. The Court will address each issue separately.

### Suppression of the Weapons Seized in Defendant's Apartment

Defendant seeks to suppress the weapons found in his apartment because, he argues, this seized evidence went far beyond the scope of the authorized search and further is not covered under the plain view exception to the warrant requirement.

■ It is plain that the fourth amendment protects individuals against unreasonable searches and seizures by the Government. It is also plain that under the fourth amendment, a neutral and detached magistrate may issue a warrant upon a finding of probable cause. *E.g., Steagald v. United States*, 451 U.S. 204, 212, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981). It is necessary that the warrant issued describe with sufficient particularity the place to be searched and the things to be seized. *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). Generally, if police officers seize evidence that is not specified in the warrant, a court may suppress that evidence because it is beyond the

scope of the authorized search. *See Ybarra v. Illinois*, 444 U.S. 85, 91–92, 100 S.Ct. 338, 342–343, 62 L.Ed.2d 238 (1979) (heroin discovered during a pat-down of bar patron suppressed where warrant only authorized search of tavern and its bartender.)

■ This general rule, however, is not without exceptions. One such exception is the seizure of evidence that is in plain view. The plain view exception to the warrant requirement permits the seizure of evidence discovered by police when there is independent prior justification for being present at the point of observation, when perceived items' evidentiary value is readily apparent, and when the discovery is inadvertent. *See Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (plurality opinion). ("The 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminatory at last emerges.")

In *In re Search Warrant Dated July 4, 1977*, 667 F.2d 117 (D.C.Cir.1981) (per curiam) (Wald, J., separate opinion), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982), Judge Wald wrote that evidence discovered that is not listed in a search warrant may be seized if its incriminating character is reasonably apparent. She outlined the following test to help establish reasonable limits on the plain view doctrine:

> First, the searching agents must be lawfully in the location where their plain viewing occurs, *i.e.*, seizures based upon plain view can occur only within the geographical limitations set out, or implied in the warrant .... Second, any seized item unspecified in the warrant must possess an incriminating character plainly and immediately apparent on its face, a character sufficiently incriminating to establish probable cause for its seizure despite the absence of a warrant mentioning it. Third, the searching agent must have come upon the unspecified items inadvertently.

*Id.* at 145 (citations omitted), *see also United States v. Lester*, 647 F.2d 869, 873 (8th

Cir.1981). *Accord Coolidge v. New Hampshire*, 403 U.S. at 466, 91 S.Ct. at 2038.

In applying these criteria to the present facts, it is evident that the police were lawfully in the location where their observation occurred. Upon entering the house, the police observed a number of weapons located in plain view throughout the apartment. Discovery of these weapons, however, would not alone give the police sufficient probable cause to make a further records check on the legality of possessing these weapons. Not until the police, in their search for marijuana and PCP, discovered defendant's parole certificate did they have sufficient probable cause to make a further check. Defendant argues that when police opened defendant's briefcase and the presence of drugs was not immediately apparent, they were not entitled to make a further search through the briefcase and discover defendant's parole certificate. He argues that such a search would be beyond the scope of the search authorized. The Government admits that the parole certificate was not discoverable immediately upon opening the briefcase, but notes that it was discovered during the search for drugs.

It is evident to the Court that certain drugs, particularly PCP, which may have a powdery consistency, could be wrapped in sheets of paper or envelopes. The presence of these kinds of drugs would not be immediately apparent without a thorough and careful examination. By going through defendant's papers, the police were not going beyond the scope of the authorized search. To properly execute the search warrant, the police were obligated to go through the papers carefully in order to do a complete search for drugs. *See United States v. Crouch*, 648 F.2d 932, 934 (4th Cir.) (per curiam), *cert. denied*, 454 U.S. 952, 102 S.Ct. 491, 70 L.Ed.2d 259 (1981) ("brief perusal" of documents not unwarranted during search for drugs). Based on the above, it is plain to the Court that the police were "lawfully ... in the location where their plain viewing occurr[ed]." *In re Search Warrant Dated July 4, 1977*, 667 F.2d at 146.

The second of Judge Wald's criteria for determining whether the police officers' discovery of evidence was properly within the limits of the plain view exception is whether the items seized plainly possessed an "incriminating character." *Id.*

It is evident to the Court that the presence of weapons alone will not give police sufficient probable cause to take further inquiry as to their legality. *See United States v. Gray*, 484 F.2d 352 (6th Cir.1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974) (police actions of removing rifles from defendant's closet, examining them, and copying down serial numbers during the execution of a warrant that directed only the seizure of alcoholic beverages could not be justified under the plain view doctrine). The presence of the weapons here, coupled with the legitimate discovery of defendant's parole certificate, certainly provides the police with the necessary probable cause to make further inquiry and to seize weapons, despite the fact that these weapons were not part of the original authorized search.

The final requirement for satisfying the criteria outlined by Judge Wald for determining whether certain evidence seized was within the plain view exception is whether the items seized were discovered "inadvertently." *In re Search Warrant Dated July 4, 1977*, 667 F.2d at 145. It is evident to the Court that both the weapons and parole certificate that were uncovered by the police were not discovered through an exploratory search for any evidence that might lead to additional charges against defendant. The search conducted by police officers of defendant's apartment, although deliberate and careful, was limited to a search for marijuana and PCP. Therefore, the Court must conclude that any discovery of evidence that fell beyond the scope of the warrant was "inadvertent." Therefore, for the reasons stated above, the Court denies that portion of defendant's motion to suppress the weapons seized at defendant's apartment.

*Suppression of Marijuana Seized Through the "Consented To" Search of Defendant's Locker*

■ Defendant also moves to suppress evidence found in defendant's locker. He argues that there was not the requisite voluntary consent present when he agreed to permit the police to search his locker. In determining whether an individual voluntarily consents to a search, a court must examine this question by the "totality of the circumstances." *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980) (plurality opinion); *accord Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1972). Defendant states that when he was arrested he consented to a search of his locker without the benefit of having his *Miranda* rights read to him. Additionally, he insists that the police told him that if he refused to consent to the search of his locker, "they could get a search warrant within the hour."

■ The Court finds that defendant did not give the requisite voluntary consent when he agreed to permit the police to search his locker. The police, by failing to provide defendant his *Miranda* rights while under arrest, *as well as* insisting that a warrant could be produced within the hour, effectively denied defendant his right to fourth amendment protection. The insistence by police, while defendant was under arrest, that a warrant could be produced almost immediately, constituted sufficient coercion as to prevent defendant from voluntarily consenting to the search. *Cf. United States v. Lace,* 669 F.2d 46, 52 (2d Cir.), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982) (consent voluntary when suspect signs consent form advising him of fourth amendment rights and no evidence of coercion); *United States v. Smith,* 649 F.2d 305, 309 (5th Cir.1981), *cert. denied,* — U.S. ——, 103 S.Ct. 1521, 75 L.Ed.2d 945 (1983) (consent voluntary when agents asked defendant to refrain from opening suitcase until they could explain his right to refuse consent); *United States v. Williams,* 647 F.2d 588, 591 (5th Cir.1981) (per curiam) (consent voluntary where no coercion, force, or use of authori-

ty, and defendant informed of right to refuse); *see also Bumper v. North Carolina,* 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968) (consent involuntary when police falsely claim possession of warrant); *United States v. Ocheltree,* 622 F.2d 992, 994 (9th Cir.1980) (consent involuntary when police imply that suspect will be detained until warrant obtained). Therefore, the Court grants that portion of defendant's motion to suppress evidence discovered in defendant's locker.

In accordance with the above, the Court grants in part and denies in part defendant's motion to suppress tangible evidence.