UNITED STATES of America, Plaintiff,

v.

Randy Joe OWEN, et al., Defendants.

Crim. No. 40020.

United States District Court,
E.D. Michigan, S.D.

Nov. 4, 1985.

Michael C. Leibson, Asst. U.S. Atty., U.S. Dept. of Justice, Detroit, Mich., for plaintiff.

Richard P. Zipser, Richard Paul Zipser & Associates, P.C., Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

On April 15, 1985, a search warrant was issued by a United States Magistrate for the search of the premises at 4445 McDowell Road in Lapeer County, Michigan. This is the home of the defendant Randy Joe Owen, movant herein. The warrant sought:

> [N]amely instrumentalities relating to the distribution of controlled substances, and including, but not limited to, notebooks, ledgers, and business records, together with currency and other fruits, miscellaneous papers, instrumentalities and evidence which are designed, intended and used as a means of committing a criminal offense, to wit: a violation of Title 21, United States Code, Section 841(a)(1), and the conspiracy to violate the above-enumerated section of the United States Code, Title 21, United States Code, Section 846.

The warrant was executed four days later on April 19, 1982 by agents of the Drug Enforcement Administration. Among the items seized were 49 weapons, large amounts of cash, marijuana and hashish, and various business records that are alleged to be related to a large-scale drug operation.

On April 14, 1984, twelve persons, Randy Joe Owen among them, were indicted by a grand jury on charges related to a large-scale marijuana distribution ring. Count One of the indictment charges all twelve with conspiracy to possess with intent to distribute and distribution of marijuana, in violation of 21 U.S.C. § 846. Count Two alleges that Owen engaged in a continuing criminal enterprise and seeks the forfeiture of all profits he obtained via the criminal

enterprise, in accordance with 21 U.S.C. § 848(a)(2).

Defendant Owen now moves for suppression of the evidence seized in the April 19, 1982 search of his home. He challenges the warrant on four grounds: 1) that the affidavit did not support a probable cause determination; 2) the DEA agent who executed the affidavit intentionally and recklessly presented false information to the magistrate; 3) the warrant was stale when executed; and 4) the warrant failed to state with particularity the items to be seized.

The affidavit supporting the search warrant was executed by DEA Special Agent John Peterson. The affidavit is 103 pages long. The bulk of the affidavit tracks the activities of one James Carlberg. Several confidential informants informed affiant that they had personal knowledge that Carlberg was a drug dealer, and had either seen drugs at Carlberg's place of business or home, or had knowledge of drug purchases made from him. The affidavit says that these informants gave sworn testimony before a federal grand jury consistent with the facts stated in the affidavit.

On February 20, 1982, Agent Peterson secured an order authorizing the interception of wire communications made to and from Carlberg's Grand Rapids home. The affidavit contains excerpts of conversations between Carlberg and several people. These conversations were ambiguous, often referring to business transactions of an unspecified nature. Many details discussed in these conversations were corroborated by independent investigative work. At least two of the persons involved in the conversations with Carlberg had been arrested for possession of narcotics. Owen does not contest that the affidavit supplies probable cause that Carlberg was engaged in criminal activity.

The connection between Carlberg and Owen occupies a relatively small portion of the affidavit. The relevant portions describe the following activity. On March 14, 1982, Carlberg called an individual and told him he would be "looking at some bones today in Detroit" and that he wanted to show them to him the next day. Later that day, Carlberg spoke with Owen about a business transaction that was to be conducted at Owen's home, the search of which is at issue here.

The contents of this conversation were corroborated by police surveillance. On March 14, 1982, Carlberg drove to Owen's home, approximately a three-hour drive, driving at a speed of seventy miles per hour. Surveillance indicated that when Carlberg's vehicle left Owen's house, "the back end of the vehicle laid lower than on the way to Owen's house." On the return trip, Carlberg travelled at fifty-five miles per hour, obeying all traffic laws. This section of the affidavit, found in the last two pages, was added to the body of the affidavit at a later time and is the subject of Owen's allegation that false and misleading material information is contained in the affidavit.

In a telephone conversation on March 17, 1982, Owen questioned Carlberg as to whether the latter had gotten "any money up." Carlberg responded that he had not and that "I really got it all out there and I really didn't get anything at all to speak of." On March 21, 1982, Owen and Carlberg once against discussed sums of money. Owen said that "if I can get this down there then I hope to pick up another one right away." In between these conversations with Owen, Carlberg informed another individual that he had some "bones" for them to see.

A final conversation between Owen and Carlberg took place on March 23, 1982. They once again discussed the finances of a transaction and mentioned specific sums of money. Owen said the "count" was more than $50,000, and Carlberg responded that he had $16,000 when he got home and that Owen had apparently received $5,000 less than he was supposed to. Owen said he would "figure it all out ... and put it on the paperwork." A court ordered pen register also revealed that between October 13, 1981 and January 4, 1982 twenty-six telephone calls were made from Carlberg's home to the home of Owen.

Based upon the incidents outlined above, Agent Peterson concluded that he believed that on March 14, 1982 Carlberg paid Owen over $50,000 for approximately 200 pounds of marijuana and that as of March 23, 1982 he still owed Owen $5,000. Owen contends that the affidavit suggests only vague business transactions not linked to any drug deals. He argues the transaction in question concerned vintage automobiles, stamp collections, or gun collections, Carlberg and Owen being collectors of those items.

 Owen's first claim is that the affidavit did not supply sufficient probable cause to justify the issuance of a search warrant. The Supreme Court has recently addressed the standard for determining probable cause, abandoning the rigid application of *Aguilar-Spinelli*[1] and adopting what has been called the "totality of the circumstances approach." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). Owen, however, asserts that *Gates* should not be retroactively applied to search warrants issued prior to the *Gates* decision and that the "two pronged test" of *Aguilar-Spinelli* should be applied.

While the Supreme Court has not expressly addressed the retroactivity of *Gates*, it has implicitly held it to be retroactive. In *Massachusetts v. Upton*, the question presented was whether a warrant issued in 1980, three years before *Gates*, was supported by an affidavit establishing probable cause. The Court upheld the warrant, applying *Gates* retroactively without comment. 104 S.Ct. 2085. The Sixth Circuit has also applied *Gates* retroactively to a "pre-*Gates*" search without directly commenting on the issue. *United States v. Algie*, 721 F.2d 1039 (6th Cir.1983).

The several courts that have directly addressed this issue have held that *Gates* may be retroactively applied. *United States v. Mendoza*, 727 F.2d 448 (5th Cir. 1984); *United States v. Little*, 735 F.2d 1049 (8th Cir.1984); *United States v. Estrada*, 733 F.2d 683 (9th Cir.1984); *United States v. Swingler*, 758 F.2d 477 (10th Cir. 1985). Applying *Gates* retroactively does not impact on the deterrent effect of the exclusionary rule.

> The purpose of refusing to apply retroactively a new decision enforcing the exclusionary rule is to avoid penalizing police conduct when the police reasonably relied on existing judicial precedent. When a court determines that a particular police practice does not violate the Constitution, there is no reason not to apply the decision retroactively. [Citations omitted].

*United States v. Estrada*, 733 F.2d 683, 685 (9th Cir.1984). Further, Owen cannot litigitmately claim to have relied to his detriment on the expectation that *Aguilar-Spinelli*, not *Gates*, would be applied.

> Defendants argue that *Gates* was a clear break with past doctrine and therefore should not be retroactive, but they do not claim (nor could they plausibly do so) that they in any way relied to their detriment on the previous rules as to probable cause. Those rules govern the conduct of officers and courts, not of the public, and the officers are seeking retroactivity here, not resisting it. Defendants did not plan any of their own conduct in reliance on rules of law governing the requisite specificity of affidavits for search warrants. It is therefore not unfair to them to apply the new rule. [Citations omitted].

*United States v. Little*, 735 F.2d 1049, 1054 (8th Cir.1984). Thus it is appropriate to use the standards set forth in *Gates* to analyze the warrant at issue here.

A search warrant, to be valid, must be supported by an affidavit establishing probable cause. The Supreme Court has held that probable cause is not to be analyzed with a "fixed and rigid formula."

---

**1.** The *Aguilar-Spinelli* test applied whenever an affidavit relied on an informant's tip. The affidavit first had to establish the informant's "basis of knowledge" and, second, it must establish the veracity of the informant. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The Sixth Circuit has recently held that "affidavits in support of an application for a search warrant are to be reviewed by both courts and magistrates in a realistic and common sense fashion." *United States v. Algie,* 721 F.2d 1039, 1041 (6th Cir.1983).

■ The Supreme Court has given district courts a very restricted role in reviewing a magistrate's determination of probable cause.

[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. [Citation omitted].

*Illinois v. Gates,* 103 S.Ct. at 2332. Where the reviewing court is faced with a close case, the decision should generally be in favor of upholding the warrant.

Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should largely be determined by the preference accorded to warrants. [Citation omitted].

*Id.* at 2331, n. 10. The Sixth Circuit has limited this court's role in even stronger language, saying that the magistrate's determination should be accorded "great deference" and should be disturbed only if "arbitrarily exercised." *United States v. Algie,* 721 F.2d at 1041. More recently the Supreme Court told reviewing courts not to conduct a *de novo* determination of probable cause, "but only [are] to determine whether there is substantial evidence in the record supporting the magistrate's decision...." *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 2085–86, 80 L.Ed.2d 721 (1984). The *Upton* court went on to say: "A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id.* 104 S.Ct. at 2088. Consistent with these principles, the warrant in the present case must be examined to determine if the magistrate exercised his authority arbitrarily.

The bulk of the 103–page affidavit supporting the issuance of the warrant to search Owen's home concerns the activities of Carlberg. Several confidential informants provided information concerning Carlberg's activities. While the affidavit supplied no basis for assessing the reliability of the informants, much of their information was corroborated by independent investigative work. This could properly supply probable cause that Carlberg was engaged in criminal activities.

Our decisions applying the totality of circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work.

*Illinois v. Gates,* 103 S.Ct. at 2334. Owen has not seriously contested the affidavit's sufficiency as to Carlberg.

The link between Carlberg and Owen is not facially strong. Owen was never observed buying, selling or transporting narcotics. In none of the telephone calls did Owen openly discuss narcotics transactions. However, seemingly innocent activity can provide probably cause to suspect criminal activity.

As discussed previously, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands.... In making a determination of probable cause the relevant inquiry is not whether particular conduct is

'innocent' or 'guilty' but the degree of suspicion that attaches to particular types of non-criminal acts.

*Id.* at 2335, N. 13. It was not unreasonable to suspect that Owen and Carlberg were discussing a drug transaction even though an alternate innocent explanation was also plausible. The trip to Owen's home, the subsequent discussions involving large sums of money and the conversations between Carlberg and others implying that he had just received a shipment of something all reinforce the reasonable suspicion that a drug deal was taking place. The twenty-six telephone calls from Carlberg to Owen over a four-month period are also material to the determination of probable cause.[2] The use of the word "bones" in and of itself suggests that the subject matter is illicit since a literal interpretation is not plausible and if the subject is in fact legitimate, a code word would hardly be necessary. Given the strong showing that Carlberg was engaged in marijuana trafficking, it is not unreasonable to infer that "bones" was a reference to quantities of marijuana.

If, as defendant suggests, each paragraph of the affidavit is viewed in isolation, nothing other than speculation is suggested. However, following the dictates of *Gates*, the four corners of the affidavit must be considered in total. *United States v. Taylor*, 716 F.2d 701 (9th Cir.1983). The *Upton* court, in reviewing an affidavit, concluded by saying that "[n]o single piece of evidence ... is conclusive. But the pieces fit neatly together and, so viewed, support the magistrate's determination." *Massachusetts v. Upton*, 104 S.Ct. at 2088. That is essentially the case here. Given the limited role this court has in reviewing search warrants, the Court finds that the magistrate had a substantial basis for determining that there was a fair probability that contraband or evidence of a crime would be found at Owen's home and that the magistrate did not arbitrarily exercise his authority in issuing a warrant for the search of that home.

■ In Owen's second challenge to the search warrant, he alleges that Special Agent Peterson engaged in intentional falsity and reckless disregard for the truth in preparing the affidavit. Specifically, he claims that the two pages in which Carlberg's trip to Owen's residence were set forth contained misrepresentations calculated to mislead the magistrate. The evidence supporting this claim is that the typeface and style of the last two pages of the affidavit differ from that of the rest of the document. It is alleged that these pages were supplied not by the affiant but rather by the Assistant United States Attorney's office in Flint, Michigan. The government responds that these pages were indeed added later because of the extra time needed by Agent Peterson to receive the corroboration of Carlberg's activities from the state police.[3]

A warrant based on a knowing or reckless falsehood contained in the supporting affidavit is invalid. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *Franks* has not been negated by the new probable cause analysis set forth in *Gates*. *United States v. Jenkins*, 728 F.2d 396 (6th Cir.1984). The Supreme Court has expressly held that *Franks* has survived both *Gates* and the recently fashioned "good faith" exception to the exclusionary rule.

> Deference to the magistrate, however, is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. *Franks v. Delaware.* [citation omitted]

*United States v. Leon*, — U.S. —, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984).

---

**2.** The Sixth Circuit has held that while information obtained from pen registers cannot be the sole basis for establishing probable cause, it is relevant and should be considered with other evidence. *United States v. Algie*, 721 F.2d at 1043, n. 6.

**3.** There is no suggestion that these pages were added after the warrant was issued.

A two-part test must be satisfied before a party making a *Franks* challenge to a facially valid search warrant can demand an evidentiary hearing to determine if there has in fact been government misconduct.

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware,* 438 U.S. at 155, 98 S.Ct. at 2676. The defendant is not required to present clear proof at this stage.

> Clear proof of deliberate or reckless omission is not required. See *United States v. Chesher,* 678 F.2d 1353, 1362 (9th Cir.1982). Such proof is reserved for the evidentiary hearing. *Id.* At this stage, all that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.

*United States v. Stanert,* 762 F.2d 775, 781 (9th Cir.1985). Owen has not mustered substantial evidence that the affidavit contained false statements that would have misled the magistrate. Owen does not deny that the state police did observe Carlberg drive to Owen's house. Neither did the affiant Special Agent Peterson, mislead the magistrate by claiming to have personal knowledge of the events recited in those pages of the affidavit. *United States v. Davis,* 714 F.2d 896, 899 (9th Cir.1983). That this part of the affidavit was prepared at a different time than other parts of the document, and on a different typewriter, is not substantial evidence that false statements are contained in the affidavit. The only falsehood to which Owen points is that the police could not have possibly observed a height difference in Carlberg's truck when he left Owen's home.

Assuming Owen is correct on this point, he must still show that if that challenged paragraph is deleted from the affidavit, the warrant would then fail for want of probable cause. *United States v. Jenkins,* 728 F.2d 396 (6th Cir.1984); *United States v. Boyce,* 601 F.Supp. 947 (D.Minn.1985); *United States v. Payden,* 609 F.Supp. 1273 (D.N.Y.1985). Whether or not Carlberg's pickup truck was lower after leaving Owen's home is not crucial to finding the magistrate had a substantial basis for finding probable cause to issue the search warrant. Given the great deference this court must pay to the magistrate's decision, the adjusted affidavit would still support a determination of probable cause. Owen's request for a *Franks* evidentiary hearing is, therefore, DENIED.

■ Defendant's third claim is that the warrant was "stale" because it was issued and executed three weeks after the last contact between Carlberg and Owen. The last contact between Owen and Carlberg recited in the affidavit occurred on March 23, 1982. The affidavit does discuss other events involving Carlberg, but not Owen, up until April 15, 1982. The warrant was issued on April 15, 1982, and it was executed on April 19, 1982.

This short passage of time cannot render the warrant stale. In *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1975), the Court concluded that a three-month delay between the completion of certain transactions and the ensuing searches did not preclude a determination that evidence of crime was still contained in the defendant's office. The Court stressed that the facts of each individual case must be considered. *Andresen v. Maryland,* 427 U.S. at 478–79, n. 9, 96 S.Ct. at 2747–48, n. 9. In *Andresen,* the Court concluded that it was reasonable to expect that such records would be maintained at the defendant's office despite the passage of time given the fact that they were prepared in the ordinary course, and that other circumstances in the case supported the belief that the records were contained in the office.

Likewise, in the present case, the investigation was continuing despite the fact that

Carlberg did not have any contact with Owen after March 23, 1982. Further, conversations with Owen and Carlberg indicated that Owen did keep "paperwork" on these transactions, and there is nothing in the record that would indicate that these records would not have been contained in Owen's home only weeks later. Given these factors, and that the passage of time was only three weeks, defendant's "staleness" argument fails.

■ Defendant's fourth allegation is that the warrant authorizing the search of his home was overbroad. The Fourth Amendment dictates that "no warrant shall issue [unless] particularly describing the . . . thing to be seized." The warrant must be drawn to prevent a "general exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). As to what is to be taken, nothing may be left to the discretion of the officers executing the warrant. *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). These standards are to be interpreted in a commonsense and realistic fashion, in light of the total atmosphere of the case. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Williams*, 351 F.2d 475 (6th Cir.1965), *cert. denied* 383 U.S. 917, 86 S.Ct. 910, 15 L.Ed.2d 671.

The warrant at issue before this court commands the seizure of:

> [N]amely instrumentalities relating to the distribution of controlled substances, and including, but not limited to, notebooks, ledgers, and business records, together with currency, and other fruits, miscellaneous papers, instrumentalities and evidence which are designed, intended and used as a means of committing a criminal offense, to wit: a violation of Title 21, United States Code, Section

841(a)(1) and conspiracy to violate the above-enumerted section of the United States Code, Title 21, United States Code, Section 846.

The Court concludes, with due regard to the deference accorded warrants, that the warrant does not satisfy the particularity requirement of the Fourth Amendment.

The language "instrumentalities relating to the distribution of controlled substance" was impermissibly vague. The task of determining what items fell within the broad category of "instrumentalities" fell to the executing officers. The warrant offered no guidelines to limit or instruct the discretion of the officers.[4] The scope of the warrant was not narrowed by the use of terms of art, e.g., "paraphernalia", in *United States v. Johnson*, 541 F.2d 1311 (8th Cir.1976), nor were the controlled substances that these instrumentalities were allegedly related to identified. *See e.g., United States v. Coppage*, 635 F.2d 683 (8th Cir.1980) [authorizing seizure of methamphetamine and items relating to its manufacture]; *United States v. Williams*, 633 F.2d 742 (8th Cir.1980) [specifying cocaine].

Warrants far more detailed that the one at bar have been held to be invalid. In *United States v. Townsend*, 394 F.Supp. 736 (E.D.Mich.1975), this Court suppressed evidence seized pursuant to a warrant describing "stolen firearms, app. ten (10), which are stored in the above location . . ." The language "controlled substances" was held impermissibly vague where the government knew that heroin was the object of the search. *United States v. Perez*, 562 F.Supp. 574 (D.N.J.1982). A warrant authorizing the seizure of "material evidence" of crimes involving amphetamines was held to give agents too much discretion. *United States v. Crozier*, 674 F.2d 1293 (9th Cir.1982). *See e.g., Application of Lafayette Academy, Inc.*, 610 F.2d 1 (1st

---

4. The case at bar is distinguishable from those where the language of the warrant was vague, but left nothing to the discretion of the executing officers. The issue there was not overbreadth, but rather whether the language was

supported by probable cause. *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir.1985); *Worthington v. United States*, 726 F.2d 1089 (6th Cir.1984, Conti, J. concurring).

Cir.1979); *United States v. Roche*, 614 F.2d 6 (1st Cir.1980).

The warrant cannot be upheld on the theory that a more precise description of the suspected items was not possible. *United States v. Townsend, supra; United States v. Gomez-Soto*, 723 F.2d 649 (9th Cir.1984); *United States v. Dennis*, 625 F.2d 782 (8th Cir.1980). The supporting affidavit explicitly alleges that the defendant was engaged in the sale of marijuana. Nor can the government rely on the affidavit to supply the specificity absent in the warrant, as there is nothing in the record to show that the affidavit accompanied the warrant. *United States v. Roche*, 614 F.2d 6 (1st Cir.1980); *United States v. Hillyard*, 677 F.2d 1336 (9th Cir.1982); *United States v. Johnson*, 541 F.2d 1311 (8th Cir.1976). The initial catch-all phrase of the warrant is impermissibly vague.

■ The balance of the warrant, authorizing the seizure of various documents and papers, was equally defective. Generic descriptions of documents have been held to be acceptable where that clause is appended to a warrant which was otherwise very detailed. *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1975); *In Re Search Warrant Dated July 4, 1977, Etc.*, 572 F.2d 321 (D.C.Cir.1977), *appeal after remand*, 667 F.2d 117, *cert. denied* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441. In the instant case, the generic description of documents does not benefit from specificity elsewhere in the warrant. The warrant in its entirety fails to meet the Fourth Amendment requirement that the things to be seized be particularly described.

■ Finding the warrant unconstitutionally vague does not end this Court's analysis. The fruits of a search executed pursuant to an illegal but facially valid search warrant obtained with objective good faith are admissible. *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Savoca*, 761 F.2d 292 (6th Cir.1985). In *Leon*, the Court

wrote that "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands ..." *Leon*, —— U.S. ——, 104 S.Ct. at 3412. The Court did identify several situations in which illegally seized evidence would still be excluded. A warrant based upon a knowing or reckless falsehood contained in the supporting affidavit is invalid under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and is still inadmissible after *Leon*. *Id.* 104 S.Ct. at 3417. Evidence issued by a "rubber stamp" magistrate is also excludable. *Id.* 104 S.Ct. at 3417. Finally, if the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the evidence so seized is inadmissible. *Id.* 104 S.Ct. at 3422. None of these three exceptions to the "good faith" rule apply in the case at bar. This Court has already determined that the warrant was supported by probable cause, and has rejected defendant *Frank's* claim.

The final exception to the *Leon* "good faith" rule is applicable to the case at bar.

> Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Leon*, 104 S.Ct. at 3422. The Supreme Court has provided guidance as to when officers may reasonably presume an unconstitutionally vague search warrant to be valid. *Massachusetts v. Sheppard*, —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). In *Sheppard*, the authorities relied upon a warrant which directed them to:

> [S]earch for any controlled substance, article, implement or other paraphernalia used in, for, or in connection with the unlawful possession or use of any controlled substance ...

*Sheppard*, —— U.S. ——, 104 S.Ct. at 3427, n. 2. The warrant was held to be unconsti-

tutionally vague by the courts below, a ruling which the Supreme Court did not disturb. The Court held that the officers reasonably relied on the illegal warrant and therefore the illegally seized evidence should be not excluded. Any error in failing to meet the particularity requirement of the Fourth Amendment, the Court held, was committed by the judge, not the officers. *Id.* 104 at 3429. *See, United States v. Accardo,* 749 F.2d 1477 (11th Cir.1985). The warrant before this Court does not transgress the limitation on the "good faith" rule described by the Supreme Court in *Sheppard.* While it did violate the Fourth Amendment requirement of particularity, it was not so "facially deficient" that the executing officers "could not reasonably presume it to be valid." The evidence seized pursuant to the illegal warrant is admissible.[5]

The defendant's final claim is that the 49 weapons should be excluded as having been outside the scope of the warrant. Not all objects seized pursuant to an invalid but reasonably relied upon warrant are admissible under the "good faith" rule.

> Our discussion of the deterrent effect of excluding evidence obtained in reasonable reliance on a subsequently invalidated warrant, assumes, of course, that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant.

*Leon,* —— U.S. ——, 104 S.Ct. at 3419, n. 19. Generally, if police officers seize evidence that is not specified in the warrant, a court may suppress that evidence because it is beyond the scope of the authorized search. This general rule, however, is not without exceptions. The "plain view" exception to the warrant requirement permits the seizure of items not listed in a warrant, but discovered inadvertently during the execution of a valid search warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The Sixth Circuit recently reviewed the elements of this doctrine.

> In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court initially explored the plain view doctrine. In that plurality opinion, the Court stated that in order to seize evidence pursuant to the 'plain view' exception, executing officers must demonstrate (1) a prior valid intrusion, (2) an inadvertent discovery, and (3) that the evidence of an unlawful act was 'immediately apparent to them.' The *Coolidge* analysis, which has been completely adopted by this Court, see *United States v. Gray,* 484 F.2d 352 (6th Cir.1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974); *United States v. Truitt,* 521 F.2d 1174 (6th Cir.1975) was reaffirmed by the Supreme Court in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

*United States v. McLernon,* 746 F.2d 1098, 1123 (6th Cir.1984).

The seizure of the 49 weapons at issue here did not arise pursuant to a prior valid intrusion. The Court has already held that the search warrant was unconstitutionally vague. The finding of "good faith" pursuant to *Leon* does not alter the illegality of the search, but merely limits the applicability of the exclusionary rule. While this Court has not found any cases applying the "good faith" exception to the "plain view" doctrine, the reasoning of *Leon* is applicable. The Court noted that:

> the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith and only after finding a violation.

> *United States v. Leon,* —— U.S. ——, 104 S.Ct. at 3422–3423.

---

5. The particularity requirement was addressed before the "good faith" rule in order to provide the authorities guidance in this area.

If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good faith issue ... Even if

The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. *Leon*, 104 S.Ct. at 3419. Here there is no evidence that the officer's presence in Owen's house was due to such conduct. Thus, while the officers' intrusion into Owen's home was not lawful, their good faith reliance on the facially valid search warrant obviates the need to apply the exclusionary rule.

The incriminating nature of the evidence seized pursuant to the "plain view" doctrine must be "immediately apparent." In a recent plurality opinion the Supreme Court said that there must be "probable cause to associate the property with criminal activity." *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983). The Sixth Circuit has since held that a reviewing court must:

> [D]etermine whether, under the circumstances of each case, probable cause was both 'immediate' and 'apparent' to the executing officers from the nature of the object viewed. We believe that this standard is mindful of the Supreme Court's constant warning that any exception to the Fourth Amendment's Warrant Clause be 'carefully delineated.' [citations omitted]

> The requirement that probable cause be 'immediate' from the discovery of the object specifically averts the 'danger inherent in such a situation that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will.' *See Brown*, 103 S.Ct. at 1546, (Stevens, J. Concurring). As a reviewing court, we best

obviate the risk of prolonged, warrantless rummaging by objectively determining whether *at the time* of discovery the officer had probable cause to connect the item with criminal behavior .... Where an executing officer's probable cause to connect the viewed item with criminal behavior is not *both* 'immediate' and 'apparent,' however, the individual's interests in retaining possession of property and in maintaining privacy, [citation omitted], and society's interest in lawful enforcement activity, [citation omitted], are greatly compromised.

*United States v. Szymkowiak*, 727 F.2d 95, 98 (6th Cir.1984). In *Szymkowiak*, the Court held that the officers' probable cause to connect a seized rifle with criminal activity was not immediate because they had to enlist the aid of a weapons expert who was not himself sure if possession of the weapon was illegal. The Court also noted that there was no "nexus" between the warrant, which authorized the seizure of certain stolen property, and the seized weapon. *Id.*, 727 F.2d at 98.

*Szymkowiak* reaffirmed the earlier Sixth Circuit case of *United States v. Gray*, 484 F.2d 352 (6th Cir.1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974). In *Gray*, the seizure of rifles inadvertently discovered by officers pursuant to a valid search warrant authorizing seizure of "any intoxicating liquors or materials used in the manufacture of intoxicating liquors" was declared unconstitutional. The Court held that there was "no nexus between the rifles and the crimes of selling or possessing intoxicating liquor without a license; nor did the officers at that time have any knowledge that the rifles were evidence of any other crimes." *Gray*, 484 F.2d at 355.[6] The Eighth Circuit has held

---

**6.** The Sixth Circuit recently reaffirmed its holding in *Gray* that there must be a nexus between the evidence seized pursuant to the plain view doctrine and the crime being investigated. *Donta, Jr. v. Hooper, et al.*, 774 F.2d 716 (6th Cir., 1985). In *Donta*, the court was addressing the issue of good faith immunity in a 42 U.S.C. § 1983 action. As the search and seizure complained of took place in 1978, the court applied the law as it stood in 1978. However, in relying upon *Gray*, the court gave no hint that the passage of time would dictate a different outcome in *Gray*. This interpretation is reinforced by the strong endorsement of *Gray* in *Szymkowiak* and *McLernon*, *supra*.

that a weapon discovered pursuant to a valid search warrant for controlled substances cannot be seized absent a nexus between the weapon and some crime.

The record fails to reveal a sufficient factual basis which would have given the officers reasonable cause to believe the pistol was contraband. [citation omitted]. There was no nexus between the pistol and the crime of unauthorized distribution of a controlled substance. Similarly, the record does not indicate that the officers at the time of the initial search were motivated by any specific, reasonable cause to believe the pistol was evidence of any crime.

*United States v. Clark,* 531 F.2d 928, 932 (8th Cir.1976) *See, United States v. Laferrera,* 596 F.Supp. 362 (S.D.Fla.1984). A court in this district held that the incriminating nature of an inadvertently seized weapon was immediately apparent because the defendant was a convicted felon for whom it was illegal to possess a weapon. *United States v. Winston,* 373 F.Supp. 1005, 1008 (E.D.Mi.1974). Another court has held that seizure of weapons during a search for controlled substances was valid only when coupled with the knowledge that the defendant was a parolee. *United States v. Blakeney,* 579 F.Supp. 1197 (D.D.C.1983).

In the instant case, there has been no evidence that it was immediately apparent

to the executing officers that the weapons they seized were connected to a crime. The mere presence of the weapons in Owen's home does not give rise to probable cause that he used them in the distribution of controlled substances.[7] This is underscored by the fact that the government admits that it knew the defendant was a gun collector, making the connection between the weapons and his suspected involvement in narcotics even more tenuous.[8]

As the incriminating nature of the weapons was not immediately apparent, the plain view doctrine is inapplicable and the evidence suppressed. The balance of the items, while seized pursuant to an unlawful warrant, are admissible pursuant to the "good faith" exception. Defendant's motion to suppress is granted in part and denied in part.[9]

IT IS SO ORDERED.

---

**7.** The Court is aware of those decisions holding that weapons discovered in controlled substances searches are almost by definition incriminating. *United States v. Reed,* 726 F.2d 339 (7th Cir.1984); *United States v. Jefferson,* 714 F.2d 689 (7th Cir.1983). The Sixth Circuit, however, as well as other Circuits have been unwilling to adopt such a per se rule and decide each case on its particular facts. For instance, it has been held that the inadvertent seizure of a "sawed off" shotgun is permissible because there is almost no legal use for such a weapon. *United States v. Truitt,* 521 F.2d 1174 (6th Cir. 1974). It is also important to distinguish "plain view" cases which involve the legality of the seizure, from those discussing the relevance during trial of items seized. *See e.g., United States v. Marino,* 658 F.2d 1120 (6th Cir.1981).

**8.** Few details have been provided as to the seizure of the weapons. Both defendant and the

government have simply identified them as a gun collection. Absent any evidence to the contrary, this Court must assume that there was nothing unusual in either the location or the type of weapons that would indicate that they were anything other than a gun collection.

**9.** The government argues that the weapons would have been "inevitably discovered" pursuant to *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). However, the government has presented no evidence, nor have they requested an evidentiary hearing to do so, that can establish by a "preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ..." *Nix,* 467 U.S. at ——, 104 S.Ct. at 2509.